ROSSITER, Respondent, vs. ÆTNA LIFE INSURANCE COMPANY OF HARTFORD, CONN., Appellant.

*September 26 — October 22, 1895.*

*Life insurance: Incomplete contract: Court and jury.*

One R. made written application for a policy of insurance, agreeing therein that the proposed insurance should not be binding on the company until the premium should be received by it in his lifetime and a receipt given therefor signed by the president and secretary of the company. By a parol agreement (perhaps made afterwards) one half of the first premium was to be taken out by the agent in board at R.'s hotel. Subsequently the agent notified R. by letter that he had his policy "all O. K." and would be with him on the following Saturday. Some days later the agent came to R.'s hotel but, not finding him, gave to his clerk, with instructions to deliver it to R., a "receipt" on a printed form, stating that upon payment of $73.90 (the amount of the first premium) within a specified time a policy would be delivered if the application therefor was approved and the policy issued. Upon this receipt the agent indorsed two items of board amounting to $16.50. Afterwards he told R.'s brother that he had left with the clerk a receipt for R.'s insurance, and that if anything should happen to him his insurance would hold good from that time as well as though he had the policy; that the board bill had been indorsed as agreed; and that he would bring or send the policy. He requested the brother to tell R. what he had said, and the brother did so, but there was no evidence that

Rossiter vs. Ætna Life Ins. Co. of Hartford, Conn.

R. made any reply or that he ever saw the receipt or assented to its terms. Two days later R. died. The policy was never delivered. In an action by the proposed beneficiary against the company, it is *held* that evidence of the foregoing facts was not sufficient to warrant the jury in finding that there was any complete or binding contract of or for insurance, and a verdict for defendant should have been directed.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This was an action on an alleged contract of insurance. It was alleged in the complaint that the defendant company, on August 10, 1889, insured the plaintiff's husband, G. W. Rossiter, in the sum of $10,000, on his life, to be paid to the plaintiff on his death, in consideration of the semi-annual premium of $73.90 to be paid by him during his life, the risk to attach that day; "the said insurance to be by policy of insurance, to be issued without delay by the defendant; the first semi-annual premium of $73.90 to be paid, as to one half thereof, within a reasonable time after the delivery of the policy, and, as to the other half, in the board and lodging of the general agent of the defendant, Charles Barker,— and that in pursuance of such contract the plaintiff's husband signed and executed an application in writing for a policy to be issued and delivered by the defendant in accordance with such contract, and delivered the same to said Barker," as such agent; that before September 5, 1889, the defendant made and transmitted such policy to said Barker, "whereby the defendant agreed, under and by virtue of said contract," to insure said Rossiter's life; that in September, 1889, Barker notified the insured that he had his policy for $10,000, all "O. K.;" and on the 14th of September, 1889, Barker delivered to a clerk in charge of Rossiter's hotel (he being absent) a receipt for the first semi-annual premium due for said policy, and notified him that the *purpose of such receipt was to show that the policy was in force, and that the*

*plaintiff could collect the money* if anything happened to plaintiff's husband, and requested him to deliver such receipt to said Rossiter; that Barker made the same statement to Rossiter's brother, later, who informed Rossiter thereof, and that the latter accepted the receipt; that Rossiter died September 16, 1889, and prior to his death had furnished, in accordance with such contract, board and lodging to said Barker to the amount of $16.50, and that no further sum was paid in discharge of said first premium during Rossiter's lifetime; that on the 18th day of the same month the balance of said premium was tendered to one Gilman, an agent of the defendant, and delivery of said policy was demanded. It is alleged that Rossiter performed all the conditions of the said contract in his lifetime, and that the defendant had failed to perform on its part, to plaintiff's damage of $10,000.

The answer is to the effect that Rossiter, August 28, 1889, delivered to the defendant's agent Barker his application, dated the 10th of the same month, for a policy on his life, for plaintiff's benefit, in the sum of $10,000, in consideration of the payment of the semi-annual premium of $73.90 during his lifetime,— the first instalment to be paid in his lifetime, and before the policy should take effect; that the application was transmitted to the secretary of the company, in order that a policy might be issued, and was approved, and a policy was issued and transmitted to said agent, Barker, to be delivered upon payment of said first instalment; that on different days and times from the 8th to the 14th, and on the 16th of September, 1889, agents of the defendant duly tendered and offered to deliver said policy to Rossiter, and demanded payment of the first instalment of premium, but that on each occasion said Rossiter refused to accept or receive the same, and refused to pay said premium or any part of it, and wholly and absolutely repudiated all the negotiations between him and the company, and wholly failed to perform the conditions of the application. The

answer insists that no payment whatever, or in any manner, was ever made on the application, and that the said policy was returned to the defendant company with the receipt for the first payment of premium, signed by defendant's secretary, annexed thereto, and it was insisted that there was no completed contract between the parties.

At the trial before a jury, Henry W. Thompson testified on behalf of the plaintiff that he was night clerk at Rossiter's hotel in Chippewa Falls, and saw the agent Barker there on the 13th or 14th of September, 1889, and that between the hours of six and seven in the evening, while in charge of the office, Barker handed him an envelope, and took it again, and drew out of it a receipt, and wrote on the back of it, and handed it back to him, and told him " to give it to Mr. Rossiter; said it was a receipt for the policy, or words to that effect; that he had looked around the house and could not find him, and that he had to go away on the train;" that he did not remember of his saying anything about the policy; that Barker did not stay any longer, but left about 7 o'clock; that he put the paper in a drawer kept as a cash drawer. E. Rossiter testified that G. W. Rossiter, his brother, died September 16, 1889; that on the 14th he saw Barker at the hotel, about half past six o'clock in the evening, and Barker said to him: "I have left a receipt with your night clerk for your brother's life insurance. Your brother has been pretty busy all day, and I did not care to bother him. If anything should happen to him, *his insurance will hold good from this time* as well as though he had the policy. I will either bring the policy up or send it up by Mr. Gilman later on." "He spoke about this board bill that was indorsed, and said that he had indorsed it there, as the understanding was with my brother. . . . He told me to tell my brother what he had said, and I did so." The receipt was put in evidence, and it reads as follows:

"(Form 78.)　　　Chippewa Falls, August 28th, 1889.

"Upon payment, on or before sixty days from date of policy, of seventy-three and $\frac{00}{100}$ dollars, we promise to deliver to G. W. Rossiter a policy of insurance for ten thousand dollars on the life of himself, if the application therefor is approved at the home office of the *Ætna Life Insurance Company*, and a policy is issued. At the same time we will also return the note given to apply in payment of the premium on said policy, which note contains the following condition: 'This note is given in payment of the premium on a policy of insurance in said company, for which I have this day applied. It is understood and agreed that insurance under such policy shall commence at the date of its issue, but that nothing shall be construed to make any insurance binding on said company until a policy is issued, or after this note becomes due and is unpaid.' This agreement shall not be binding until countersigned by the agent.

　　　　　　　　　　　　　　"J. L. ENGLISH,

"CHARLES BARKER, *Agent*.　　　　　　*Secretary*."

On this paper was indorsed the following:

| | |
|---|---|
| August 28th, board............................................ | $4 50 |
| Sept. 13th, 6 days............................................ | 12 00 |
| | $16 50 |

A letter was put in evidence, in the handwriting of Barker, to Rossiter, since deceased, dated September 5, 1889, as follows: "I have your policy for $10,000, all O. K. I shall be with you on Saturday," etc. E. Rossiter further testified that he heard some conversation between his brother and Barker in the office, about the middle or latter part of August; that he could not give the exact words; that they were talking about this insurance, and that the first half of the first premium was to be taken out by Mr. Barker; that he could not state the exact words; that there was nothing said about the other half, that he could remember, and that he could not remember what his brother said about it, only

in that way; that he could not give the language either of them used.

The defendant moved for a nonsuit, but the motion was denied. The defendant put in evidence said application of G. W. Rossiter, which recites that he was desirous of effecting an insurance with the *Ætna Life Insurance Company* in the sum of $10,000 on his life, upon the renewal plan, and proceeded to make certain representations and give certain answers to questions, and contains the following stipution: "I understand that all policies and agreements made by the said *Ætna Life Insurance Company* are signed by its president or secretary, and that no other person can grant insurance or make any agreement binding upon said company; . . . and I further agree that the insurance hereby proposed shall not be binding on said company until the amount of premium, as stated therein, shall be received by said company or an accredited agent thereof, during the lifetime of myself, and a receipt given therefor, signed by the president or secretary of the company." It appeared that the note, provisions of which are recited in the receipt ("form 78") of August 28, 1889, had never been given, and that no note had ever been given by Rossiter to the defendant for the first payment of premium or any part of it, or for any other payment, and he never paid any part of the premium. The application for a policy was dated back to August 10, 1889, so that Rossiter could go in under the rates for persons twenty-nine years of age. The agent Barker testified that the figures on the back of "form 78," handed to the night clerk September 14, 1889, were made to show what he was owing for board; that he had no money with him, and did not want to go away without leaving something to show his board bill.

The defendant asked the court to direct a verdict in its favor, which the court refused. After verdict and judgment thereon for the plaintiff, the defendant appealed.

Rossiter vs. Ætna Life Ins. Co. of Hartford, Conn.

*Geo. W. Bird,* for the appellant, argued, among other things, that the policy never became operative so as to impose any liability on the defendant, because it was never delivered, no part of the premium was ever paid, or ever tendered, or claimed to have been tendered in the lifetime of the assured, and under the stipulations of the policy payment of the first premium and delivery of the policy in the lifetime of the assured were necessary to the creation of any liability on the policy. *McClave v. Mut. R. F. L. Asso.* 55 N. J. Law, 187; *Hardwick v. State Ins. Co.* 20 Oreg. 547; *Wainer v. Milford M. F. Ins. Co.* 153 Mass. 335; *Misselhorn v. Mut. R. F. L. Asso.* 30 Mo. App. 589; *Misselhorn v. Mut. R. F. L. Asso.* 30 Fed. Rep. 545; *Kohen v. Mut. R. F. L. Asso.* 28 id. 705; *Weinfield v. Mut. R. F. L. Asso.* 53 id. 208; *Paine v. Pac. M. L. Ins. Co.* 2 C. C. A. 459; *Bidwell v. St. Louis F. D. & Ins. Co.* 40 Mo. 42; *Heiman v. Phœnix M. L. Ins. Co.* 17 Minn. 153; *Myers v. Keystone M. L. Ins. Co.* 27 Pa. St. 268; *Taylor v. Phœnix Ins. Co.* 47 Wis. 365; *Zigler v. Phœnix Ins. Co.* 82 Iowa, 569; *New York L. & W. W. Co. v. People's F. Ins. Co.* 96 Mich. 20; *Insurance Co. v. Young's Adm'r,* 23 Wall. 85; *Hoffman v. John Hancock M. L. Ins. Co.* 92 U. S. 161; *Giddings v. Ins. Co.* 102 id. 108; *New York M. L. Ins. Co. v. Statham,* 93 id. 24; *Klein v. Ins. Co.* 104 id. 88; *Thompson v. Ins. Co.* id. 252; *Knickerbocker L. Ins. Co. v. Pendleton,* 112 id. 696; *Hoyt v. Mut. B. L. Ins. Co.* 98 Mass. 539.

*H. W. Chynoweth,* for the respondent.

PINNEY, J. The written policy that the defendant issued on the life of G. W. Rossiter, and forwarded to its agent for delivery, was never in fact delivered, and did not become a binding contract between the parties. The only ground upon which the plaintiff's recovery can be sustained is that the defendant had entered into a valid executory agreement with Rossiter, during his lifetime, to insure his life for $10,000

for the plaintiff's benefit. The evidence bearing on this question has been fully stated, and it is very brief and does not admit of misapprehension. Putting the facts together in the order in which they occurred, it is evident that the negotiations for the issue of a policy of insurance to Rossiter began about the middle or latter part of August, 1889, and probably at or about the time the latter made his written application, which was dated back to August 10th so he could be insured as being of the age of twenty-nine years. This application was for a written policy, and in it Rossiter agreed that "the insurance hereby proposed shall not be binding on said company until the amount of premium, as stated therein, shall be received by said company or an agent thereof, *during the lifetime of myself*, and a receipt given therefor, signed by the president or secretary of the company." Whether this application was delivered contemporaneous with, or prior to, or subsequent to, the conversation between G. W. Rossiter and the agent, testified to by E. Rossiter, is not material. If the conversation was first in order of time, or contemporaneous with the delivery of the application, the written document must be taken as the true expression of the state of the negotiation and the relative position and rights of the parties. If the conversation occurred subsequently, the evidence of the witness was not sufficient to go to the jury as independent evidence of a parol contract for insurance, or as evidence of any material modification of the existing stipulation, except in respect to the manner in which the first half of the first instalment of premium was to be paid; and in respect to that the witness simply says that "it was to be taken out by Mr. Barker," the agent. He testified there was nothing said about the other half that he could remember, and that he could not remember what his brother said about it, only in that way. The matter appears to have remained in this condition until September 5th, when the defendant's agent Barker notified

Rossiter, by letter of that date, that he had his policy for $10,000, and would be with him Saturday. The matter continued in this situation until September 14th, clearly on the basis of the written application, and evidently with the expectation that the transaction would be concluded by the delivery of a written policy upon the basis of the written application, save that there is evidence that the first half of the first premium was "to be taken out by Mr. Barker," and up to this time there is no evidence whatever of any other agreement, or tending to show any contract for insurance on the life of Rossiter which was to be binding upon the company until the entire first premium should be paid, and in Rossiter's lifetime, as stipulated in the written application.

If the case had stopped here, it would have been too clear for question, and it only remains to consider the effect of the receipt ("form 78") dated August 28, 1889, but which was left with the night clerk of the hotel Rossiter was keeping on the 14th of September, about 7 o'clock in the evening,— two days before he died. Barker, the defendant's agent, as the plaintiff's evidence shows, had received the written policy to deliver, and was at G. W. Rossiter's hotel with the intention — presumably, at least — of closing the transaction, and delivering the policy accordingly; but he was unable to find Rossiter or get his attention to this business. The night clerk, Thomas, testified that an envelope containing the receipt was handed to him by Barker, with instructions to give it to Rossiter; that Barker said "that he had looked around the house and could not find him, and that he had to go away on the train." The night clerk put the paper in the cash box. E. Rossiter testified that Barker told him that evening: "I have left a receipt with your night clerk for your brother's insurance. Your brother has been pretty busy all day, and I did not care to bother him. *If anything should happen to him*, his insurance will hold good *from this time* as

well as though he had the policy. I will either bring the policy up or send it up by Mr. Gilman later on,"— and that he told him to tell his brother what he had said, and that he did so. This is the substance of what transpired. In the first place, it is material to observe that this evidence shows that Barker and G. W. Rossiter either did not meet that day, or that nothing transpired between them on the subject of insurance. Certainly, there is not the slightest evidence of any new contract made that day between the parties, or of any modification of the existing arrangement. There is no evidence from which a jury could be allowed to infer that there had been any meeting of the minds of the parties on any new proposition or contract. What the effect would have been if the agent had met Rossiter and made to him the statements testified to by these witnesses, and he had received from him the receipt and had assented to its terms, we have no occasion to consider. Although E. Rossiter testifies that he told his brother what the agent said, there is no proof that G. W. Rossiter ever spoke a single word in reply, or ever saw the receipt, or that the night clerk or any one ever gave it to him. For these reasons the receipt is not available as evidence of any contract for insurance, and affords no proof of any alteration of the previously existing arrangement, as disclosed by the testimony. There was clearly no evidence of any completed or binding contract of or for insurance between the parties at the time of G. W. Rossiter's death, to take the case to the jury; and the circuit court erred in not directing a verdict, as requested, for the defendant.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.