(101 N. W. 183.)

---

MAY V. THOMPSON v. THE TRAVELERS INSURANCE COMPANY.

Opinion filed November 17, 1904.

**Life Insurance — Construction of Policy.**

1. The life insurance policy upon which this action is brought contained this condition: "This policy shall not take effect unless the first premium is actually paid while the assured is in good health." *Held* that, in the absence of an estoppel, the liability of the insured depends upon the actual, and not mere apparent, good health of the assured when the first premium was paid.

**To Estop an Insurer by His Retention of Premiums, He Must Act Upon Knowledge of the Facts.**

2. In order that the acceptance or retention of the premium may estop an insurer from relying upon a breach of condition in the policy, it must appear that it had knowledge of the facts constituting the breach.

**A Change in Condition of Applicant's Health Pending Negotiation for Insurance Must Be Disclosed.**

3. Where, pending negotiations for a contract of life insurance, a material change in the condition of the applicant's health occurs, such as would influence the judgment of the insurer in accepting or declining the risk, the applicant is under obligation to make disclosure of the fact.

**Health of Assured — Evidence — Practice.**

4. The disease which the defendant claims the insured had when the first premium was paid, and from which he died, was not known to the attending physician or others until the day of assured's death, or to the insurer until disclosed by the proofs of death. Under these circumstances, the admission of, and subsequent refusal to strike

out, testimony to the effect that neither the insurer nor its agents returned or offered to return the premium, and that it made no inquiry as to the assured's health when the premium was paid, was prejudicial error, for which a new trial should have been granted.

Appeal from District Court, Barnes county; *Glaspell,* J.

Action by May V. Thompson against the Travelers Insurance Company. Judgment for plaintiff, and defendant appeals.

Reversed.

*John E. Greene,* for appellant.

The evidence is insufficient to support the verdict on the ground of good health. Good health is that condition wherein the body is free from any disease or ailment which tends to shorten life or permanently impair the health; a state of health which is free from any disease or ailment that seriously affects the general healthfulness of the system. Richards on Insurance (2d Ed.), 199; Grattan v. Met. Life Ins. Co., 92 N. Y. 274; Bancroft v. Home Benefit Assn., 120 N. Y. 14; Plumb v. Penn. Mutual Life Ins. Co., 65 N. W. 611; Met. Life Ins. Co. v. Howle, 62 Ohio St. 204; Manhattan Life Ins. Co. v. Carder, 82 Fed. 986.

The evidence was insufficient to establish a waiver. An agent to solicit applications, deliver policies and collect premiums upon receipts countersigned by the state agent, cannot waive conditions or forfeitures, and his knowledge is not to be imputed to the insurer. Kirkman v. Farmers Ins. Co., 57 N. W. 952; Globe Mut. of N. Y. Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Heath v. Springfield Fire Ins. Co., 58 N. H. 414; Maier v. Fidelity Mut. Life Ins. Co., 24 C. C. A. 239; Clemens v. Superior Assem. Royal Society of Good Fellows, 30 N. E. 496; Barteau v. Ins. Co., 67 N. Y. 595; Levell v. Royal Arcanum, 30 N. Y. Supp. 205; Wood on Ins., sections 413 and 435; Alexander v. Germania F. Ins. Co., 66 N. Y. 464; Northern Assurance Co. v. Building Assn., 183 U. S. 308; Richards on Ins., 99; Sun Ins. Co. v. Texarkana F. & M. Co., 4 Tex. Civ. App. 398.

*Winterer & Winterer,* for respondent.

Good health does not necessarily mean absolute freedom from any ill, pain or indisposition. May on Insurance (2d Ed.), 387; Connecticut Mutual Life Ins. Co. v. Union Trust Co., 112 U. S. 250, 5 Sup. Ct. Rep. 119, 28 L. Ed. 708; Brown v. Metropolitan Life

Ins. Co., 32 N. W. 610; Clemens v. Mutual Life Ins. Co., 20 Pa. Sup. Ct. 567; Woodmen etc. v. Locklin, 67 S. W. 331.

The defendant by accepting, retaining and appropriating the premium and delivering the policy with full knowledge of assured's health on the date when the premium was paid and the policy was delivered, has by such acts waived the provision in the policy that it should not take effect if the assured was not in good health and it is estopped to deny the validity of the policy. Lightbody v. North American Ins. Co., 23 Wend. 18; Hubbard v. Hartford Ins. Co., 33 Ia. 325, 11 Am. Rep. 125.

Knowledge of the soliciting agent material to a risk would be the knowledge of the insurance company, and it would be bound thereby. Jordan v. State Ins. Co., 19 N. W. 917; Stone v. Hawkeye Ins. Co., 28 N. W. 47; Goodwin v. Provident Sav. Life Ins. Co., 66 N. W. 157.

When an agent to procure and forward applications for insurance makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer and not to the insured. American Life Ins. Co. v. Mahone, 21 Wall. 152, 22 L. Ed. 593; Miner v. Phoenix Ins. Co., 27 Wis. 693; Wians v. Allemania Fire Ins. Co., 38 Wis. 342; Brandup v. Insurance Co., 27 Minn. 393, 7 N. W. 735; Wood on Insurance, chapter 12; May on Ins., section 120; Power v. Morton Ins. Co., 80 N. Y. 111; Mut. Reserve Fund v. Summers, 107 Fed. 418; Johnson v. Dak. F. & M. Ins. Co., 1 N. D. 167, 45 N. W. 799.

Knowledge of its agent for soliciting insurance and collecting premiums, or facts justifying insurer in forfeiting a policy, is binding on it, though not communicated. N. W. Life Assurance Co. v. Bodurtha, 53 N. E. 787; Union Cent. Life Ins. Co. v. Halloweel, 43 N. E. 277; McElroy v. British Am. Assurance Co., 94 Fed. 990; Dietz v. Providence Washington Ins. Co., 8 S. E. 616; North British & Mercantile Ins. Co., v. Steiger, 16 N. E. 95; Newman v. Association, 40 N. W. 87; Lumberman's Mutual Ins. Co. of Chicago v. Bell, 45 N. E. 130.

Notice to a subagent while engaged in soliciting, of any fact material to the risk, is notice to the company and binds it the same as if given directly to the agent himself. Carpenter v. German-Amer. Ins. Co., 31 N. E. 1015; Goode v. Georgia Home Ins. Co., 23 S. E. 744; Steele v. German Ins. Co. of Freeport, 53 N. W. 514; Arff v. Star Fire Ins. Co., 25 N. E. 1073; Bennett v. Council

Bluffs Ins. Co., 31 N. W. 948; Phoenix Ins. Co. v. Ward, 26 S. W. 763; Schoeneman v. Western etc. Ins. Co., 20 N. W. 284.

An insurance company may waive the payment of the premium at the time it is due. If it is afterwards paid after loss occurs and is retained and appropriated by the company and the policy delivered, it will be a waiver of the terms of the policy and the company cannot retain the premium and refuse to pay the loss. Schoeneman v. Western etc. Ins. Co., supra; Lobee v. Standard Live Stock Ins. Co., 33 N. Y. S. 657; Smith v. St. Paul Fire & Marine Ins. Co., 13 N. W. 355; Bloom v. State Ins. Co., 62 N. W. 810.

Acceptance of premium after loss has occurred is a waiver of the right to declare a forfeiture of the policy and not a mere act of revival. Joliffe v. Madison Mutual Ins. Co., 39 Wis. 111; Johnson v. Dak. Fire & Marine Ins. Co., 1 N. D. 167, 45 N. W. 799; Cotten v. Fidelity & Casualty Co., 41 Fed. 506; Oshkosh Gas Light Co. v. Germania Fire Ins. Co., 37 N. W. 819; Phoenix Life Ins. Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. Rep. 500, 30 L. Ed. 644; Wood on Fire Insurance, 50-51; Schoeneman v. Western etc. Ins. Co., supra; Weiberg v. Minnesota Scandinavian Relief Assn., 76 N. W. 37; Erdmann v. Mutual Ins. Co., 44 Wis. 376; McQuillan v. Mut. Reserve Fund Assn., 87 N. W. 1069; Gray v. National Benefit Assn., 11 N. E. 477.

YOUNG, C. J. This case has been tried twice in the district court. On both trials the plaintiff had a verdict, and each was followed by the denial of a motion for a new trial. This is the second appeal to this court. The report of the former appeal will be found in 11 N. D. 274, 91 N. W. 75. The action is upon an insurance policy for $2,000 issued by the defendant upon the life of plaintiff's husband. Defendant bases its denial of liability upon the following stipulation in the policy, "This policy shall not take effect unless the first premium is actually paid while the assured is in good health," and alleges that the assured was not in good health when the first premium was paid, but, on the contrary, was then suffering from a disease from which he subsequently died. Upon the former appeal we reversed the order denying the motion for a new trial upon the ground of prejudicial errors in the admission of testimony which was offered by plaintiff to show waiver of the above condition. The present order must be reversed for the same reason.

The following statement of facts from the former opinion will aid in a proper understanding of the questions involved in this appeal: On the 23d of August, 1900, the plaintiff's husband, Horace S. Thompson, made an application for a policy of life insurance in the defendant company for the sum of $2,000. On the 4th of September following, the policy was issued pursuant to such application, and sent to the local agent of the company at Valley City, N. D., and was received by him on September 11th. On the 15th of September the policy was delivered to one Tracy, for Thompson, upon payment of the premium, amounting to the sum of $53.24. The policy was payable to the plaintiff. The assured died on September 28, 1900. Proofs of death were made on October 15, 1900. Payment under the policy was refused by the company, and this suit followed. It appears that on or about September 1st the assured was injured in a runaway accident resulting in a broken rib. A doctor treated him for such injury by applying bandages on two occasions when the assured visited his office. The assured made a trip to St. Paul between the dates of these two treatments, and remained there three or four days, returning on September 10th. On September 13th he was suffering from a dull headache, and was in bed a part of the time. On the evening of that day he made arrangements with Tracy to pay the insurance premium and procure his policy on the following Saturday, in case his health or the weather prevented his going to Valley City, as he then intended to do. He did not go to Valley City, and Mr. Tracy did as requested. On Sunday night his headache became very severe, and a doctor was sent for in the morning of Monday, the 17th, and visited him on that day, and thereafter had the assured under his care, and visited him at various times until his death, on the 28th. The agent of the defendant received the premium on the 15th of September, and sent it to the St. Paul office; and in due course of business it was received at the main office of the company, at Hartford, Conn., on October 12, 1900. The policy bears date September 4, 1900, but contains no acknowledgment of the payment of the premium.

The defendant contends that the evidence is insufficient to support the verdict, in this: That it conclusively shows that the assured was not in good health when the first premium was paid, and wholly fails to show that the condition in the policy above set out was waived, and assigns a large number of errors upon the admission

of testimony which was offered for the purpose of establishing a waiver. On the other hand, counsel for plaintiff contend that there is evidence in the record from which the jury was warranted in finding either that the insured was in good health, or that the condition was waived. There is no controversy as to the validity or effect of the condition in question. It was made a part of the contract by the parties, and, in terms, it makes the liability of the defendant depend upon an extrinsic fact, namely, the good health of the deceased when the first premium was paid. It will be noted that this provision is not a mere representation that the assured was in good health, or a statement of his belief or opinion that such was the fact. It is equivalent to a warranty of the fact, and is a fact agreed upon by the parties as a condition precedent to the attaching of defendant's liability. Apparent good health was not sufficient. The fact that a disease may be latent and unknown does not relieve the insured from his stipulation. It is the fact of good health which governs. The effect of such a stipulation is well set forth in Powers v. The Northeastern Mutual Life Ass'n, 50 Vt. 637. In that case the assured had warranted in his application, which by stipulation was made the basis of his policy, that he did not have diseases of the heart. The jury found that the assured had a disease of the heart at the time when he made his application, but did not know it, and might not be reasonably expected to know it. It was held that, as the assured had thus agreed that the company should not assume the risk of that disease it was not liable. The court said: "A policy of insurance is to be construed like other contracts inter partes. * * * In this case the parties have mutually agreed upon the terms of their contract, the language embodying it is plain, and its scope and effect are neither difficult nor uncertain. By the terms of the policy and application * * * the parties agreed that the truthfulness of the applicant's answer to the questions propounded should be the basis upon which the validity of the policy should stand—if true, the policy should be a valid contract; if untrue, the policy should have no force as a contract. The applicant assumed the whole risk of the consequences if his answers turned out untrue. The existence of disease in an applicant for life insurance is the presence of the very peril the company insures against. It is like insuring a building already on fire. The question as to the health of the applicant is a preliminary one —to ascertain if he is an insurable subject. The force of the

stipulations and conditions above recited is to create a contract obligation on the part of the applicant that he was free from the heart disease. He agreed that such peril and risk would not be encountered by issuing the policy, and, if such peril did exist, the contract should not be operative. Proof of the existence of the heart disease established a breach of the underlying contract upon which the policy rested. It is wholly immaterial whether the applicant knew of the existence of the disease, because he agreed absolutely that it did not exist. Nor is it any answer to say that the question is a scientific one, and a layman might easily be deceived into a false answer. Scientific or simple, the applicant took the risk of the answer. If he had answered that he had no knowledge that the disease existed, the finding of the jury might affect the result." See, also, Tobin v. Modern Woodmen (Mich.), 85 Wis. 622; Baumgart v. Modern Woodmen, 85 Wis. 546, 55 N. W. 713; Boyle v. Northwestern M. R. Ass'n, 95 Wis. 312, 70 N. W. 351; Insurance Co. v. Pyle, 44 Ohio St. 19, 4 N. E. 465, 58 Am. Rep. 781; Volker v. Metropolitan Life Ins. Co. (Com. Pl.), 21 N. Y. Supp. 456; Miles v. Connecticut M. L. Ins. Co., 3 Gray, 580; Aetna Life Ins. Co. v. France, 91 U. S. 510, 23 L. Ed. 401; Jeffries v. Insurance Co., 22 Wall. 47, 22 L. Ed. 833. See, also, numerous cases cited in note to Fidelity Mutual Life Ass'n v. Jeffries (107 Fed. 402, 46 C. C. A. 377) reported in 53 L. R. A. 193.

The order refusing a new trial must be reversed for prejudicial errors in the admission of testimony in support of the alleged estoppel. The plaintiff claims that Secor, the defendant's agent, knew the condition of the assured's health when he delivered the policy to Tracy; that his knowledge is imputed to the company; and that the acceptance and retention of the premium under these circumstances estops the defendant from urging that the assured was not then in good health.. Secor's authority was that of a soliciting agent, and extended to taking and forwarding applications, delivering policies and collecting first premiums. It does not appear that he had authority to pass upon the physical condition of an applicant, or that it was a part of his duties to furnish the information in reference thereto upon which his principal acted in accepting or declining risks. That information was provided by the written application and the report of the medical examiner, independent of the soliciting agent. The view we have taken of

the evidence renders it unnecessary to determine whether the scope of Secor's agency was such that his knowledge was the knowledge of his principal. For, assuming that to be the case, we are clear that there is an entire absence of evidence upon which to found an estoppel.

On the former appeal it was urged that the defendant was estopped because it had retained the premium. This we denied for the reason that it did not appear that it was retained with knowledge that the assured was not in good health when the premium was paid. Upon the facts then presented, we said: "It is beyond dispute that neither the agent of the company at Valley City, nor any of the officers of the company, had any knowledge of the insured's health on September 15th, except such as was communicated to said agent or officers of the company by the application for insurance of August 23d. Neither the agent nor the company had any knowledge of the broken rib or of any sickness of the insured when the premium was paid on September 15th. * * * The authorities uniformly hold that the acceptance of the premium under such circumstances does not constitute a waiver of a forfeiture or other defense, and the same may be pleaded in avoidance of all claims under the policy when suit is brought upon it. Joyce on Insurance, par. 1369; Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387; Bingler v. Insurance Co. (Kan. App.), 61 Pac. 673." We further held that the retention of the premium by the company after the receipt of proofs of death, showing the cause of death, did not operate as an estoppel; the rights of the parties having been fixed by the death of the assured. Our conclusion upon that point is re-enforced by the recent case of Stringham v. Mutual Life Ins. Co. (Or.) 75 Pac. 822.

On the present trial evidence was offered tending to show that, before the premium was paid, Secor had heard that the assured had been in a runaway accident, and had been dragged upon the ground and bruised. Over the objection of defendant's counsel, he was permitted to testify on behalf of plaintiff that he made no effort to inquire into the health of the assured when the policy was delivered, that he had heard of the broken rib when he sent the premium to the company, and that he did not offer to return the premium to the assured, or to any one for him. The plaintiff also testified, over objection, that the defendant had not offered to return "the amount of the premium paid for and on account of the

policy in question, to wit, $53.24." Other evidence of a similar nature was received over like objection. At the close of the case, counsel for the defendant moved to strike out Secor's evidence "upon the ground that it is inadmissible as evidence of any waiver; also the testimony of the plaintiff that has reference to the non-return of the premiums paid, for the same reason." The motion was overruled. In our opinion, it should have been granted. It is undisputed that the assured was in good health when he made his application on August 23d. It is agreed that the injuries received in the runaway accident were not of such serious character that it can be said that by reason of such injuries alone he was not in good health on September 15th. The evidence tends very strongly to show that his death on September 28th was caused by a disease termed "empyema," and the sole ground urged to establish the fact that the assured was not in good health on September 15th is that he had this disease when the policy was delivered. Assuming that the knowledge of Secor is to be imputed to the defendant, does this, coupled with the receipt and retention of the premium, estop it from relying upon this condition of the policy? Clearly not, for greater knowledge than he had cannot be imputed. Secor did not know, and no one else knew, that the assured had empyema; and it was the presence of that disease alone, if it was present, which avoided the policy. The disease, if present, was latent. The attending physician did not discover it until the day of his death. The company was not apprised of the cause of his death until the proofs of death disclosed it. Not only was Secor ignorant of the fact that the assured had the disease in question or any other disease, but was informed by the attending physician, after inquiry, that there was nothing the matter with the assured. Under these circumstances, had Secor communicated all that he knew, and all that others seem to have known, to the company, it would not have disclosed any ground for avoiding the policy, for it was only when it was discovered, on the day of his death, that the assured had empyema, that it was known that he was not in good health when the premium was paid. So far as outward appearances went, the assured seemed to be suffering from merely a temporary indisposition. There was, then, no knowledge on the part of Secor or the company of the fact which gave it the right to avoid the policy, and the defendant was under no obligation to make inquiry as to that fact. The obligation was the reverse. The defendant had,

after an examination, found the assured in good health on August 23d, and it had a right to assume that this condition still existed when the policy was delivered. It was the duty of the assured to make disclosure, and he made none. It is well settled that the obligation rests upon an applicant for life insurance to disclose such changes in his physical condition as occur pending the negotiation as would influence the judgment of the company as to the advisability of accepting the risk. May on Insurance, sections 190, 191; Piedmont & Arlington Ins. Co. v. Ewing, 92 U. S. 377, 23 L. Ed. 610; Whitley v. Piedmont & Arlington Ins. Co., 71 N. C. 480. Such information as the agent had came from general report, and not from the assured or any one representing him. The record discloses neither word nor act on the part of the agent or the defendant which would induce a belief in the assured that the policy was binding without regard to the condition of his health, while it fairly appears, on the contrary, that he obtained a delivery of the policy without disclosing the facts. The present record brings the case within the rule followed in the former appeal, viz., that without knowledge there can be no estoppel. The evidence offered to support the estoppel was wholly insufficient, and it should have been stricken out. That its retention and submission to the jury was prejudicial is apparent, and for this reason the motion for a new trial should have been granted. The defendant did not ask for judgment notwithstanding the verdict. We have no reason, therefore, for expressing an opinion upon his contention that the evidence shows conclusively that the assured was not in good health. A new trial must be granted for prejudicial errors in refusing to strike out the evidence relating to the alleged estoppel, and no further relief could be given if we sustain his contention as to the conclusive character of the evidence that the assured was not in good health.

The district court is directed to vacate the order appealed from, and to enter an order granting a new trial. All concur.