12783

COOLEY v. METROPOLITAN LIFE INS. CO.

(150 S. E., 793)

*Mr. Leon L. Rice,* for appellant,

*Messrs. Haynesworth & Haynesworth,* and *Watkins & Prince,* for respondent,

December 12, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action upon a policy of insurance in the sum of $500, alleged in the complaint and admitted in the answer to have been issued by the company and delivered to the insured, on March 1, 1928, upon the life of Emma Smith, and payable, in the event of her death, to her daughter, the plaintiff Mamie Cooley.

The defense of the company was that at the time of the application, and at the time of the payment of the premium, and at the time of the issuance and delivery of the policy, the insured was suffering from a malignant cancer, for which she had been treated constantly by physicians for at least ten months prior thereto, and from which she died in less than ten days thereafter.

The testimony abundantly established the following facts which appear in the statement of facts in the transcript of record, admitted on all sides:

During the spring and summer of 1927, nearly a year before the date of the policy, March 1, 1928, the insured was living at Belton, S. C. In May, 1927, she consulted Dr. Young at Anderson. He diagnosed her ailment as cancer, but did not communicate his opinion to her. At Dr. Young's suggestion, she was examined by Dr. Wrenn, an X-ray specialist, who reached the same diagnosis, but who, like Dr. Young, did not disclose it to Mrs. Smith. *He found that the disease had made such headway that a cure was impossible. This was nearly a year before the date of the policy.* The fact that neither physician acquainted Mrs. Smith with the

fatal nature of her disease could not alter *the fact* that ten months before her application she was suffering from cancer. During the remainder of the year she made constant visits to the hospital at Anderson for treatment. In the fall she moved from Belton to Williamston, which is only a few miles from Pelzer. Dr. Martin of Pelzer was called in at some time in January, 1928, a little more than a month before the date of her application for insurance. He diagnosed her trouble as cancer, and, like the other physicians who did not care to add the certainty of impending death to her physical suffering, withheld the information from her. She became ill on March 2d, the day after the date of the policy, and died on the 9th, a week later, unquestionably of cancer. Proofs of death were forwarded to the company. They disclosed the cause of her death as cancer. The company promptly declared the policy void, denied liability, and tendered a return of the premium which had been paid. This was declined.

After the testimony was all in, each side moved for a directed verdict; the plaintiff for the full amount of the policy with interest; the defendant for a verdict in favor of the plaintiff for the amount of the premium paid with interest. His Honor, Judge Townsend, granted the defendant's motion, ruling as follows:

"This receipt states the contract between the parties, made at the time of the application for the insurance, and bases the right of the plaintiff to recover upon the condition that Mrs. Emma Smith, the insured, was in sound health at the time the application was made. Now, it appears from the uncontradicted evidence in this case that Mrs. Smith died before the policy was delivered and within less than a month after the application was made for the policy, from cancer, a disease which existed at the time the application was made and was then in an advanced stage, although its existence at that time and up to the time of her death was unknown both

to her and to the insurance company. This being the only conclusion that can reasonably be drawn from the uncontradicted evidence, it seems to me that there is no question to submit to the jury, but that it is my duty to direct you to find a verdict in favor of the defendant.

"The direction of a verdict, it seems to me, is also proper in favor of the plaintiff, only, for the return of the amount of the premium which had been paid to the Company at the time of the application. This conclusion is strengthened by the conditions in the Policy, that 'if the insured, Mrs. Smith, had been treated by a doctor for any serious disease within the space of two years before the date of the policy, then the liability of the Company should be restricted or reduced to the return of the premiums which had been paid the Company.' "

From this order and the judgment entered upon the verdict so directed, the plaintiff has appealed.

There is a minor controversy in the case whether the policy was ever actually delivered to the insured. I think that as the action was based upon the policy which the complaint alleges was issued and delivered on March 1, 1928, and the answer admits that fact, it is open to neither party to contest the fact, and I will consider it as admitted.

Taking the application then, along with the receipt and with the policy, there does not appear the shadow of a doubt, in my mind, that the company was entitled to deny its liability upon the policy, and that his Honor, Judge Townsend, was right in directing a verdict for the plaintiff, for the amount of the premium paid with interest.

The receipt contains the following:

"No obligation is incurred by said Company, by reason of this deposit, unless and until a policy is issued upon said application, *and unless at the date and delivery of said policy the Life proposed is alive and in sound health.* * * * No obligation is assumed by the Company unless the applica-

tion is so approved *and the Life proposed is now in sound health."*

In reference to the application, the transcript in the "statement of facts and testimony" declares: "In the application Mrs. Smith stated that she had never had cancer, was then in sound health, had not been under the care of any physician for three years and had never been under treatment in any dispensary or hospital."

In the policy it is specifically provided under the heading "Conditions": "If (1) the Insured is not alive *or is not in sound health* on the date hereof; or if (2) the Insured has within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had cancer, or disease of the heart, liver, or kidneys, then, in any such case, the Company may declare this Policy void, and the liability of the Company, in the case of any such declaration or in the case of any claim under this Policy, shall be limited to the return of premiums paid on the policy."

It is established by the overwhelming evidence in the case, in fact it is conceded by the plaintiff:

1. That the insured was afflicted with cancer, and had been a sufferer from that dread and fatal malady for at least ten months before the date of the policy; that she died within less than ten days thereafter from that cause; she could not possibly have been in "sound health" at the date of the policy.

2. That within less than a year before the date of the policy, she had been attended by at least three physicians, all of whom diagnosed the case as one of cancer; and had received repeated treatments in the Anderson Hospital for that disease.

I cannot discern, either in the exceptions of the plaintiff, any valid, or even plausible, reason why the defendant company should be denied the *conventional* rights which it has

secured; by that term I mean the rights which it has secured *by the contract* (which is evidenced by the premium receipt, the application signed by the insured, and the policy), unless it be decreed by this Court that a different rule should be applied to contracts of insurance, from that which obtains in the interpretation of every other form of contract; this would be manifestly unjust.

*By the exceptions* the beneficiary of the policy contends that the company, in dispensing with a medical examination before issuing the policy, has waived its right to claim a forfeiture of the policy by reason of the express stipulations in reference to "sound health," treatment by physicians, and presence of cancer, contained in the documents mentioned which constitute the basis of the contract of insurance. It is difficult to understand how this waiver could be held to exist, in view of the specific stipulations entered into *after* it became understood that a medical examination in small policies like this would not be required. Notwithstanding this, the premium receipt, the application, and the policy, each, contained the stipulations.

In 37 C. J., 381, it is said: "Sometimes, however, no medical examination is required, and *in lieu* thereof the contract is made subject to certain conditions as to sound health and freedom from specified diseases."

The usual provision for a medical examination is a precaution for the benefit and security of the insurance company. If it sees proper to dispense with it, there can be no objection to its doing so; but dispensing with it, and at the same time providing for the conditions mentioned, can in no sense be held a waiver of what was later specifically provided.

The decision in favor of the beneficiary is proposed to be based, not upon the contention of the appellant just mentioned, but upon the ground that neither the insured nor the company was aware, at the time of issuing the policy, of the presence of the disease.

I do not think it can be controverted that a stipulation, made a part of the contract of insurance, to the effect that in order for the policy to become effective, the insured must at the time of the issuance of the policy be in "sound health," is valid.

In 37 C. J., 403, it is said: "A stipulation or agreement by the Company and an applicant that the policy of insurance shall not take effect or be binding on the Company unless the first premium is paid while the applicant is alive and in good or sound health is valid and will be given effect according to its terms; it is a condition precedent to liability on the part of the Company and a performance or waiver thereof is necessary in order to render the contract of insurance effective and enforceable, unless the case falls within the operation of an incontestable clause. *Citing Perry v. Ins. Co.* 150 N. C., 143, 63 S. E., 679; *Rathbun v. Ins. Co.,* 30 Idaho, 34, 165 P., 997; *Hawley v. Ins. Co.,* 92 Iowa, 593, 61 N. W., 201; *Whiting v. Ins. Co.,* 129 Mass., 240, 37 Am. Rep., 317; *Ins. Co. v. Salisbury,* 279 Mo. 40, 213 S. W., 786; *Ormond v. Ins. Co.,* 96 N. C., 158, 1 S. E., 796; *Bowen v. Ins. Co.,* 20 S. D., 103, 104 N. W., 1040; *Rossiter v. Ins. Co.,* 91 Wis., 121, 64 N. W., 876; *Anders v. Ins. Co.,* 62 Neb., 585, 87 N. W., 331; *Ins. Co. v. Hightower,* 148 Ga. 843, 98 S. E., 469; *Clark v. Ins. Co.,* 129 Ga., 571, 59 S. E., 283; *Reese v. Ins. Co.,* 111 Ga., 482, 36 S. E., 637; *Williams v. Ins. Co.,* 146 Ga., 246, 91 S. E., 44; *Oliver v. Ins. Co.,* 97 Va., 134, 33 S. E., 536; *Stringham v. Ins. Co.,* 44 Or., 447, 75 P., 822."

This has been recognized as the settled law in this jurisdiction. *Welch v. Ins. Co.,* 124 S. C., 492, 117 S. E., 720. In that case the application and the policy contained this stipulation: "This policy shall not take effect until the first premium is paid and the policy delivered, nor unless on the date of said payment and delivery of the policy the insured is alive and in sound health."

This policy was not delivered for the reason that when it was received by the local agent for delivery, the insured was sick. The beneficiaries brought an action for damages on account of the refusal to deliver. The Court held: "The appellant was entitled to a nonsuit as asked for on the whole case, on the ground that the application and policy contained three conditions precedent: *First,* payment of the premium; second, delivery and acceptance of the policy; third, a state of good health at the time of delivery."

In 1 Joyce, Ins. (2d Ed.), § 97a, it is said: "Whether or not the applicant is in an insurable condition, is an insurable risk, at the time of the delivery of a life or accident policy is an important factor, and therefore where it is stipulated that the insurance shall not be binding unless delivery is made and the first premium paid during the lifetime of the applicant or while he is in sound or good health, or some like provision is made *a condition precedent,* it must be complied with to render the company liable, unless such condition is waived or there is an estoppel"—citing many cases.

In 14 R. C. L., 900, it is said: "However, applications for policies of life insurance, as well as policies, frequently provide that the policy shall not take effect unless it is delivered to the insured and the first premium paid while he is in good health and such a provision is valid and enforceable. * * *"

See also *Wright v. Ins. Co.* (Tex. Com. App.), 248 S. W., 325; *Ins. Co. v. Mandelbaum,* 207 Ala., 234, 92 So., 440, 29 A. L. R., 649; *Ins. Co. v. Mason,* 151 Ark., 135, 235 S. W., 422, 19 A. L. R., 618; *Denton v. Ins. Co.* (Tex. Civ. App.), 231 S. W., 436; *Rathbun v. Ins. Co.,* 30 Idaho, 34, 165 P., 997; *Ebner v. Ins. Co.,* 69 Ind. App., 32, 121 N. E., 315; *Ins. Co. v. King,* 137 Tenn., 685, 195 S. W., 585; *Logan v. Ins. Co.,* 107 Wash., 253, 181 P., 906.

In *Oliver v. Ins. Co.,* 97 Va., 134, 33 S. E., 536, it was held, quoting syllabus: "An applicant's express agreement in his written application that the policy should not take effect

until the first premium was paid, and the policy delivered during his continuance in good health, created a condition precedent to the company's liability. * * * "

In *Reese v. Ins. Co.,* 111 Ga., 482, 36 S. E., 637, it was held, quoting syllabus: "Where the application for a policy of life insurance and the policy itself both stipulated, in effect, that the policy should not become binding on the association issuing it until the first premium had been actually received by the association or its authorized agent during the good health of the applicant, * * * the actual payment of the first premium during the good health of the applicant was a condition precedent to the liability of the association. * * * "

In *Ins. Co. v. Hightower,* 148 Ga., 843, 98 S. E., 469, it was held, quoting syllabus: "Where the application for a policy of life insurance and the policy itself stipulate that the insurance shall not become effective until the first premium shall have been actually paid while the applicant is in good health, * * * the actual payment of the first premium during the good health of the applicant is a condition precedent to the liability of the insurer. * * * "

In *Stringham v. Ins. Co.,* 44 Or., 447, 75 P. 822, 824, the court said: "By the application it is made a condition of the contract's becoming effective that the first premium shall have been paid during the continuance in good health of the applicant, and the policy shall have been signed by the secretary of the company and issued. If these things have been done and performed, plaintiff's right of action upon the contract of insurance has accrued; otherwise not."

In *Anders v. Ins. Co.,* 62 Neb., 585, 87 N. W., 331, it was held, quoting syllabus: "A provision in a life insurance policy as follows: 'This policy shall not take effect until the first premium thereon shall have been paid to the Company, or to some person authorized by the Company to receive it, in accordance with the premium receipt accompanying the

same, and while the insured is in good health, as evidenced by the health certificates properly executed and furnished to the Company,' is a condition precedent, and, before recovery can be had, insured must show compliance therewith, or a waiver by the insurer."

See also *Ins. Co. v. Wertheimer* (D. C.) 272 F., 730.

The foregoing authorities are clear to the point that the provision in question constitutes *a condition precedent,* the performance of which must be shown. This makes it unnecessary to enter upon the much debated issue as to whether a statement by the insured constitutes a warranty or a representation.

Under the accepted definition of "sound health," I do not think that there can be a question but that the presiding judge was right in directing a verdict.

In 3 Joyce Ins. (2d Ed.) § 2004, it is said: "In other words, the term 'good health,' when used in a policy of life insurance, means that the applicant has no grave, important, or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system."

The proposition that the validity of the stipulation depends upon the knowledge of the insured that she was afflicted with a disqualifying disease I do not think can be maintained. If, as a matter of fact, she was at the time so afflicted, which is conceded, and if, as is held in the *Welch case,* the fact of her being in good health was a *condition precedent* to the effectiveness of the policy, her ignorance of the fact that she was cancerous could not possibly alter the admitted fact that she was.

In 37 C. J., 404, it is said: "The actual and not merely the apparent health of the applicant is controlling in determining whether he was in good health when the first premium was paid or tendered."

In *Thompson v. Ins. Co.,* 13 N. D., 444, 101 N. W., 900, 901, the Court said: "There is no controversy as to the valid-

ity or effect of the condition in question. It was made a part of the contract by the parties, and, in terms, it makes the liability of the defendant depend upon an extrinsic fact, namely, the good health of the deceased when the first premium was paid. It will be noted that this provision is not a mere representation that the assured was in good health, or a statement of his belief or opinion that such was the fact. It is equivalent to a warranty of the fact, and is a fact agreed upon by the parties as a condition precedent to the attaching of defendant's liability. Apparent good health was not sufficient. The fact that a disease may be latent and unknown does not relieve the insured from his stipulation. It is the fact of good health which governs."

In *Powers v. Ins. Co.,* 50 Vt., 635, the insured had warranted in his application, which by stipulation was made the basis of his policy, that he did not have diseases of the heart. The jury found that the insured had a disease of the heart at the time when he made his application, but did not know it, and might not be reasonably expected to know it. It was held that as the insured had thus agreed that the company should not assume the risk of that disease, it was not liable. The Court said: "A policy of insurance is to be construed like other contracts *inter partes.*  *  *  *   In this case the parties have mutually agreed upon the terms of their contract; the language embodying it is plain; and its scope and effect are neither difficult nor uncertain. By the terms of the policy and application  *  *  *   the parties agreed that the truthfulness of the applicant's answer to the questions propounded should be the basis upon which the validity of the policy should stand—if true, the policy should be a valid contract; if untrue, the policy should have no force as a contract. The applicant assumed the whole risk of the consequences, if his answers turned out untrue. The existense of disease in an applicant for life insurance is the presence of the very peril the Company insures against. It is like insuring a building already on fire. The question as to the health of the appli-

cant is a preliminary one, to ascertain if he is an insurable subject. The force of the stipulations and conditions above recited is, to create a contract obligation on the part of the applicant that he was free from the heart disease. He agreed that such peril and risk would not be encountered by issuing the policy, and if such peril did exist, the contract should not be operative. Proof of the existence of the heart disease established a breach of the underlying contract upon which the policy rested. It is wholly immaterial whether the applicant knew of the existence of the disease, because he agreed absolutely that it did not exist. Nor is it any answer to say that the question is a scientific one, and a layman might easily be deceived into a false answer. Scientific or simple, the applicant took the risk of the answer."

See also *Tobin v. Woodmen,* 126 Mich., 161, 85 N. W., 472; *Blumer v. Ins. Co.,* 45 Wis., 622; *Baumgart v. Wood-men,* 85 Wis., 546, 55 N. W., 713; *Boyle v. Association,* 95 Wis., 312, 70 N. W., 351; *Ins. Co. v. Pyle,* 44 Ohio St., 19, 4 N. E., 465, 58 Am. Rep., 781; *Volker v. Ins. Co.,* 1 Misc. Rep., 374, 21 N. Y. S., 456; *Miles v. Ins. Co.,* 3 Gray (Mass.) 580; *Ins. Co. v. France,* 91 U. S. 510, 23 L. Ed. 401; *Jefferies v. Ins. Co.,* 22 Wall, 47, 22 L. Ed. 833; *Association v. Jeffords* (C. C. A.) 107 F. 402, 53 L. R. A. 193.

In *Logan v. Ins. Co.,* 107 Wash., 253, 181 P., 906, it was held that the condition that the insured be in good health at the time the policy is delivered is a condition precedent, and it was immaterial that the insured did not know of the disease which affected his condition.

In *Sulski v. Ins. Co.,* 274 Ill., 516, 113 N. E. 862, it was held that in a life policy providing that no obligation is assumed by the insurer unless at the date of the policy the insured is alive and in sound health, the fact of the sound health of the insured at such time is what determines the liability of insurer, and not the apparent health of insured, nor any one's belief that insured was in sound health at such time.

For these reasons I think that the judgment of the Circuit Court should be affirmed, and the majority of the Court agreeing thereto, it is so ordered.

MESSRS. JUSTICES BLEASE, STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE GRAYDON, concur in result.

MR. CHIEF JUSTICE WATTS did not participate.

MR. ACTING ASSOCIATE JUSTICE GRAYDON (concurring in the result) : Under *Welch v. Ins. Co.,* of Va., 124 S. C., 492, 117 S. E., 720, I concur in the result of the opinion.

MR. JUSTICE CARTER (concurring in result) : This action by the plaintiff, Mrs. Mamie Cooley, against the defendant, Metropolitan Insurance Company, was commenced in the Court of Common Pleas for Anderson County October 10, 1928, for the purpose of obtaining judgment against the defendant in the sum of $500.00, on a life insurance policy issued by the defendant upon the life of Mrs. Emma Smith, mother of the plaintiff; the plaintiff being named as the beneficiary in the policy. The defendant in its answer denied liability upon grounds to which we shall hereinafter advert. The case was tried before his Honor, Judge W. H. Townsend, and a jury at the December, 1928, term of Court of Common Pleas for Anderson County. At the conclusion of all the testimony both parties moved for directed verdicts, upon grounds which will be referred to further on in this opinion. His Honor, Judge Townsend, refused plaintiff's motion, for direction of a verdict for the full amount of the policy, $500.00, and interest, but granted the defendant's motion, directing the jury to write a verdict for the plaintiff for the amount of the premium paid, with interest, only, and the jury rendered a verdict as directed for that amount, $17.04. From the ruling and judgment of the Circuit Court, the plaintiff has appealed to this Court, imputing error to his Honor, Judge Townsend, as alleged in the several exceptions which will be included in the report of the case.

While there are four exceptions, the principal question involved in the appeal may be stated thus: Under the facts of the case, should the presiding judge have directed a verdict, and, if so, for whom and in what amount?

In its answer the defendant made the following admissions: "That the defendant admits that pursuant to an application made to it on the 15th day of February, 1928, it issued, on March 1, 1928, a policy on the life of Mrs. Emma Smith and admits that said policy was delivered to the plaintiff and the premium paid by her; and defendant further admits that the said Mrs. Emma Smith died within seven days after the issuance of the policy; and that thereafter, the plaintiff surrendered the policy to the defendant and demanded payment to her of the amount of said policy, which demand has been refused."

But the defendant denied liability under the policy for the following alleged reasons, stated in its answer:

"That said policy was issued upon, and subject to, the following conditions, which were made a part of the contract, to-wit: "If (1) the insured is not alive, or is not in sound health on the date hereof; or if (2) before the date hereof the insured has been rejected for insurance by this or any other Company, Order or Association, or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had a pulmonary disease, chronic bronchitis, or cancer or disease of the heart, liver, or kidneys, unless such rejection, medical attention or previous disease is specifically recited in the "Space for Endorsements" on page four in a waiver signed by the Secretary or an Assistant Secretary, * * * then, in any such case, the Company may declare this policy void, and the liability of the Company in the case of any such declaration, or in the case of any claim under this policy, shall be limited to the return of premiums paid on the policy, except in the case of fraud, in which case all premiums will be forfeited to the Company.' "

"That in fact, the said Mrs. Emma Smith was not in sound health on the date of the policy, March 1, 1928; that, in fact, she had been attended by a physician for a serious complaint within two years before said date, and before said date had had cancer; that the said Mrs. Emma Smith had suffered with cancer for many months prior to the date of the policy, and within two years prior to said date had been treated by physicians, for said complaint, on numerous occasions and that on the date of said policy the said Mrs. Emma Smith then had cancer and died as a result thereof on March 8, 1928; and that under the terms of the policy the liability of the Company is limited to the return of the premiums paid on the policy.

"That after the death of the said Mrs. Emma Smith, and as soon as the facts hereinabove alleged were ascertained by the defendant it elected to declare, and did declare, the said policy void and tendered to the plaintiff the return of the premiums paid, which tender was refused."

The transcript of record contains the following agreed statement of facts, pertinent to the appeal:

"On February 15, 1928, Mrs. Emma Smith, the insured, was living at the Williamston Cotton Mill at Williamston, S. C., and occupying a part of a house rented by one of her sons. The plaintiff, her daughter, was living with her husband on her husband's farm below Belton, S. C. On that date, A. H. Pruitt, agent for the defendant, was at the plaintiff's home in reference to certain policies of insurance then being taken by the family and it was then proposed that plaintiff insure the life of her mother with the defendant in the sum of Five Hundred ($500.00) Dollars, and plaintiff was informed that where the amount of insurance did not exceed Five Hundred ($500.00) Dollars, no medical examination was necessary. The plaintiff's husband, Will Cooley, paid the premium for six months in advance for the benefit of plaintiff and a receipt was issued as follows:

"Received from Will Cooley, Sixteen and 35-100 Dollars, being a deposit of premiums or six monthly premiums on account of Application for Insurance in the Metropolitan Life Insurance Co. made this date. If application is accepted and a policy issued, this sum will be applied towards payment of premiums thereon. If application is rejected, the amount will be returned to the applicant. No obligation is incurred by said Company, by reason of this deposit, unless and until a Policy is issued upon said application, and unless at the date and delivery of said policy the Life proposed is alive and in sound health. Except that if the Life proposed is now in sound health and the amount paid by applicant at the time the application is written is not less than four weekly premiums, or one monthly premium (if a monthly premium policy) and this receipt, detached from the original application, covering such payment, is surrendered to the Company, the Company agrees if the Application is approved at the Home Office in New York, that should death occur prior to the delivery of the Policy it will, nevertheless, pay such amount as would have been due under the policy, if issued. No obligation is assumed by the Company unless the application is so approved and the Life proposed is now in sound health.

"Dated February 15, 1928.

"A. H. Pruitt, Agent."

It also appears from the agreed statement of facts that on the same date, February 15, 1928, the premium money was paid and receipt issued by the agent, A. H. Pruitt. Then Mr. Pruitt, the agent, went to Williamston and had the insured, Mrs. Smith, mother of the plaintiff, sign an application for the policy and sent the same to the defendant Insurance Company. In this application which Mrs. Smith signed, it is stated that "she had never had cancer, was then in sound health, had not been under the care of any physician for three years and had never been under treatment in any

dispensary or hospital." On March 1, 1928, the defendant, to which we shall refer as the Insurance Company, issued the policy in question, bearing date March 1, 1928. The policy was forwarded by the Insurance Company to its agent, Mr. Pruitt, for delivery, and it was in his possession for several days when he was informed by the husband of the plaintiff that Mrs. Smith, the insured, was dead, having died nine days after the date of issuance of the policy, the policy having been issued March 1, 1928. The said agent thereupon sent the policy to the Insurance Company with proof of death. The Insurance Company promptly tendered a return of the premium, declared the policy void, and denied liability except for the premium. The Insurance Company later sent the policy to the attorney for the plaintiff at his request.

The respondent calls special attention to the following provision in the policy: "If (1) the Insured is not alive or is not in sound health on the date hereof; or if (2) the Insured has within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had cancer, or disease of the heart, liver or kidneys, then, in any such case, the Company may declare this Policy void and the liability of the Company in the case of any such declaration or in the case of any claim under this policy shall be limited to the return of premiums paid on the Policy."

It appears from the statement of facts contained in the transcript of record that:

"During the Spring and Summer of 1927, Mrs. Emma Smith was living at Belton, S. C., with some of her relatives and during the month of May she consulted Dr. C. H. Young, of Anderson, S. C., in regard to her physical condition. Dr. Young would not tell her what her trouble was but diagnosed her diease as cancer. He referred her to Dr. Frank Wrenn who is an X-Ray expert and Superintendent of the Anderson County Hospital. Dr. Wrenn gave Mrs.

Smith X-Ray treatment but did not tell her what her trouble was in view of the fact that her disease was at such a stage of development that there was no chance of curing her and felt that it would be too cruel to advise her of her true condition. Mrs. Smith was not a patient in the hospital but at regular periods during the year of 1927 came from Belton by automobile or by trolley to the hospital for treatment. During the late fall of 1927, she moved to Williamston and worked in the Williamston Cotton Mill and lived in a house which was partly occupied by one of her sons. Dr. W. T. Martin, of Pelzer, S. C., was called to see her on one occasion in January. He diagnosed her trouble as cancer but did not tell her or any of the family what her trouble was. Mrs. Smith became ill the 2nd day of March, 1928, and died as a result of this cancer on the ninth day of March, 1928.

"The plaintiff, by reason of some family estrangement, had not seen her mother during the last six months of her life up to within several days of her death when she learned that she was ill. Neither the plaintiff nor her husband knew that Mrs. Smith was sick or suffering from cancer or in bad health. The son that lived in the same house with Mrs. Smith at Williamston did not know she had cancer or that there was anything abnormal about her health. Mrs. Smith had never been informed that she had cancer up to the time that she took her bed on March 2. There was nothing about her appearance that would lead a layman to conclude that she was not in good health. The Insurance Company did not know that Mrs. Smith had cancer or was in bad health nor did the agent of the company have any such knowledge until the proof of death was made out. Mrs. Smith appeared to be in health on the 15th of February, 1928, when she signed the application; her death was due to cancer which she had had for ten months and probably longer."

The defendant's motion for a direct verdict was based upon the following grounds: "Mr. Prince: If the Court

please, we should like to make a motion for a directed verdict on the grounds, that no other reasonable inference can be drawn from the testimony other than the fact that Mrs. Emma Smith, the person whose life was insured, was, at the time of the taking of the application and at the time of the date of the policy, suffering from a serious malady, that is cancer. And, second, that there is no evidence from which the jury could infer that knowledge of this disease had been brought to the attention of the Insurance Company and had by the Insurance Company been waived."

The grounds of the plaintiff's motion were as follows:

"Mr. Rice: I move for a directed verdict for the plaintiff for the full amount sued on, with interest from the date of the death of Mrs. Smith, on the ground that the undisputed evidence shows that at the time of the application and the issuance of the policy the only evidence is to the effect that Mrs. Smith did not know that she had cancer or was not in sound health.

"And second: Because there is no evidence whatsoever that there was any intention to defraud."

It is clear that there was no evidence from which the jury could infer that knowledge of this disease (cancer) had been brought to the attention of the Insurance Company, and it is also clear from the record that neither the insured nor the beneficiary had any knowledge that the insured had such disease at the time the application was signed, the premium paid, or when the policy was issued, or at any other time, except that the beneficiary received such information after her mother's death. In fact, there is no contention on the part of Insurance Company, that the insured or the beneficiary had any knowledge of the insured having the disease in question, cancer. Neither is there any claim made that the insured or the beneficiary in any way attempted to practice a fraud on the Insurance Company. Counsel for the respondent stated frankly that "the defendant company does not

claim that the insured attempted to defraud the company," and the record shows the same as to the beneficiary, the plaintiff in the case.

Under the state of facts to which we have called attention, viewed in the light of the contract between the parties, it is our opinion that Judge Townsend was right in directing a verdict. See *Welch v. Life Insurance Co.,* 124 S. C., 492, 117 S. E., 720.

It is therefore the judgment of this Court that the exceptions be overruled, and that the judgment of the Cicuit Court be and the same is hereby affirmed.

MR. JUSTICE STABLER concurs.