## DEATH OF THE INSURED BEFORE DELIVERY OF THE POLICY.

Court of Appeals for Geauga County.

THE COLUMBUS MUTUAL LIFE INSURANCE COMPANY v. MABEL
MAY FORD.

Decided, February Term, 1914.

*Life Insurance—Contract for, Complete, When—Delay in Delivery of
Policy—Where Without Excuse Does Not Invalidate the Contract—
Notwithstanding Death of the Insured Occurred before Delivery
Was Made.*

1. On the 23d day of June, 1910, upon the solicitation of the agent of
the company, deceased made application for a policy of life insur-
ance for $1,000 on the twenty payment life plan and paid the first
premium to the satisfaction of the agent, who accepted the ap-
plication and premium and agreed for the company that it would
issue a policy for the amount stated and on the plan stated, if
the medical examination of the applicant, to be made by the com-
pany's medical examiner, should disclose that the applicant was
in sound, insurable condition of health. This examination was
made on the fourth day thereafter and the result thereof reported
to the company by its medical examiner. The company, finding the
report satisfactory, issued a policy in conformance with the ap-
plication and sent the same to its agent to be delivered to the

insured. The agent finding the insured seriously ill with typhoid fever, refused to deliver the policy, and by direction of the president of the company returned the same to the company. The insured died four days after the receipt of the policy by the agent. *Held:* There was a completed contract between the parties for insurance and that the company was liable for the amount of the policy.

2. Upon the application made as above stated, and payment of premium by note to the agent, the medical examiner of the company made examination of the applicant on the 27th day of June, but through his own neglect did not forward the company his report of such examination until the 7th day of July following, the same being received by the company July 8th, and the report being approved by the company a policy was issued to the applicant, as provided for in his application, and mailed to the agent on July 14th, to be delivered to the insured, but was not delivered owing to the then condition of the health of the insured. The insured was taken ill on the evening of the 7th of July and was visited by a physician, such physician being the medical examiner of the insurance company who had previously examined him for the company. On this visit the physician expressed the opinion that the insured was threatened with typhoid fever, of which disease he died July 18th. The insured had no information that the report of the medical examination had not been forwarded to the company immediately following the making thereof, which should have reached its office by due course of the mail the next day after the mailing of the same. Deceased said nothing to the physician, who was the medical examiner of the company, during the time he attended him in his last illness about making any report to the company of his illness nor did he otherwise notify the company of the same. *Held:* That all of the terms of the contract of insurance were agreed upon between the parties before the last illness of the insured and the fact that the insured did not give any direct notice to the company otherwise than to its medical examiner of the changed condition of his health after the evening of July 7th, did not avoid the policy and the company was liable thereon.

3. Where an insurance company seeks to avoid the payment of a policy of life insurance by reason of the fraudulent concealment of the changed condition of the health of the insured after the making of the application, such defense to be made available must be pleaded and such fraudulent concealment properly alleged in its answer.

*J. M. Sheets* and *R. S. Parks*, for plaintiff in error.

*J. Buchwalter*, contra.

NORRIS, J.; METCALFE, J., and POLLOCK, J., concur.

This is a proceeding in error to reverse the judgment of the court of common pleas of this county, in favor of the defendant in error, on a policy of life insurance issued by plaintiff in error on the life of Moses Ford, husband of the defendant in error. The facts in the case as shown on the trial are substantially as follows:

On the 23d day of June, 1910, C. F. McFadden, agent of the insurance company, went into the harvest field of Moses Ford and solicited him to purchase an insurance policy on his life, whereupon the said Moses Ford made application in regular form for a policy for the sum of $1,000, twenty payment life, and agreed with the insurance company, through its said agent, to pay for such policy ten and two one-hundreths dollars quarterly the first year and thirty-seven and seventy-nine one-hundredths dollars annually thereafter, and then gave his note to said agent for nine and fifty-one hundredth dollars, payable to the personal order of said C. F. McFadden, and did furnish him dinner and horse feed in payment of the balance of said first payment of said fifty-two one-hundredths dollars, all to be in full of the first payment of ten and two one-hundredths dollars; that said agent in consideration of the premises agreed to insure said Moses Ford in the sum of $1,000 provided the medical examination of the physical condition of said Ford, to be thereafter made by the medical examiner of said company, should show that the said Moses Ford was in sound bodily health and an insurable risk under the rules of the company; that thereafter on the 27th day of June following the said Moses Ford was examined by Dr. Heely, the medical examiner of the company, and the result of such examination reported to the company and the same was accepted and approved by the company and subsequently a policy of insurance was issued on the life of Moses Ford for the sum of $1,000, made payable in case of his death to the defendant in error; that owing to the delay of the medical examiner, Dr. Heely, either through his going away to celebrate the Fourth of July or for some other reason, he did not send his report of the medical examination to the company until July 7th following,

which fact does not appear to have been known to Moses Ford or
the defendant in error.

The insurance company's policy of insurance No. 1402 was
executed to Moses Ford on the 14th day of July, 1910, and sent
to McFadden, agent of the company, who received it on the 15th.
day of July, 1910, and did not deliver it to Moses Ford but re-
turned it to the company on the advice of the president, July
18th, 1910. McFadden received the policy for the sole purpose
of delivery, but did not deliver it for the reason that at the time
he received it the said Moses Ford was ill with an acute malady
—typhoid fever. The note given by Ford was returned to him
the day of his decease, to-wit, July 19th, 1910. Proofs of death
were made out in regular form. Moses Ford, it appears, was
taken ill in the evening of July 7th, which illness developed into
what subsequently proved to be typhoid fever; that in the even-
ing of the 7th of July he called in his family physician, who
happened to be Dr. Heely, the medical examiner for the insur-
ance company. Nothing was said about the insurance policy,
and so far as the record shows, Moses Ford had no knowledge
that the report of his medical examination had not been promptly
sent to the company on the day he was examined and a policy
issued to him thereon. Mabel May Ford, the beneficiary named
in the policy, brought suit on the policy in the court of common
pleas of this county making the necessary averments to recover
thereon.

The answer of the company, so far as the questions we shall
discuss are concerned, was a general denial. The jury returned
a verdict in favor of the defendant in error and judgment was
entered thereon. The question as to whether or not there was
a completed contract between the insurance company and Ford
was before this court once before, and this court held that there
was such completed contract, and our judgment in the case was
affirmed by the Supreme Court without report.

Counsel for the insurance company in argument to this court
insisted that it was the duty of Moses Ford at the time he was
taken sick, on the evening of the 7th of July and thereafter
during his illness, to notify the insurance company of the fact

of such illness and change in his physical condition, and that because he did not do so there was such fraudulent concealment on his part that avoided the policy.

In answer to this it might be urged first, that no such issue is made by the answer; that if the plaintiff in error intended to rely upon such facts as claimed in this case, it was its duty to set up same in its answer. Upon that question we think the case of *Moody* v. *Insurance Company,* 52 Ohio St., 12, is decisive and it is supported by the following authorities: *Port Blakely Company* v. *Hartford Insurance Co.,* 50 Wash., 664, reported in 97 Pac., 781; *Taylor* v. *Modern Woodmen,* 42 Wash., 389, reported in 84 Pac., 867, and see authorities cited by counsel on page 869; Bliss on Code Pleading, 3d Ed., Section 356a; Nash Pleading, 300, 382, 782; *Kahnweiler* v. *Phoenix Insurance Co.,* 67 Federal, 483.

But, was there any fraudulent concealment in this case, or, in other words, was it the duty of Moses Ford to notify the company after he was taken ill of the change in his physical condition? The rule relied upon by plaintiff in error is probably as well stated in *Thompson* v. *Travelers Insurance Company,* 101 N. W. (N. D.), 900, as anywhere in the following words:

"Where, pending negotiations for a contract of life insurance, a material change in the condition of the applicant's health occurs, such as would influence the judgment of the insurer in accepting or declining the risk, the applicant is under obligation to make disclosure of the fact."

Numerous authorities are cited by counsel in support of that rule. Perhaps the leading one is *Piedmont & Arlington Life Insurance Company* v. *Ewing,* 92 U. S., 377, the syllabus of which is as follows:

"While negotiations were still pending between an agent of the company and the applicant, touching the precise terms of a contract of insurance, the amount of the premium and the mode of payment, a friend paid the premium, but concealed from the agent the condition of the applicant, who was then *in extremis,* and died in a few hours. The agent, in ignorance of the facts, delivered the policy. *Held*: That no valid contract arose from the transaction."

But, Mr. Justice Miller, on page 382, we think very clearly distinguishes that case from the one we have here in the following language:

"This case differs very widely from those cited in which a delay in payment has been treated by the court as waived. All such cases proceed on the ground that a valid agreement as to the terms of the contract has been made."

What part of the contract between Moses Ford and the insurance company still remained open? What, if any, negotiations between the parties were still pending and undisposed of as to the terms of the contract? The amount of the policy was agreed upon, the kind of policy was agreed upon, the amount of the premium was determined between the parties and was actually paid. The only question that remained open at the time the agent called upon Moses Ford in his harvest field was whether the condition of his health at that time was sufficiently sound to warrant the company in issuing to him a policy.

That question was disposed of within a few days by the medical examination made by the medical examiner of the company, and he was found to be in an insurable condition of health, so that when that examination was made the entire contract was concluded and closed and the minds of the parties met, and all that remained to be done was for the insurance company to issue the policy, which it did. This, we think, is settled in the case of *Insurance Company* v. *Higginbotham,* 95 U. S., 380, where the following principle is announced:

"*Held*: That the representations of the insured as to the condition of his health on the 1st of October, when he applied for the reinstatement of his policy, and paid the premium, were not continuous until the 14th of that month; and that the contract was consummated on the day when the premium was paid."

See also *DeCamp* v. *M. J. Mutual Life Insurance Company,* 7 Fed. Cases, 313, case No. 3719, 3 Ins. Law J., 89, and in *Southern Life Insurance Company* v. *Kempton,* 56 Georgia, 339, we find a leading case on this subject. In the syllabus in the case it is said, referring to a case similar to the one we have:

"In such a case as this, the principle that any change in the health of the applicant between the time of the application and of the issuing of the policy, would relieve the insurance company from consummating the contract, does not apply; the delivery of the agent, under the facts, was a consummation of the policy, and that, with the other facts proven, show a consummation of the contract."

In *Keim* v. *Home Mutual Insurance Company,* 42 Mo., 33, also 97 Am. Dec., 291, it is said:

"It is laid down by Angell that when the negotiation for insurance is so far completed that nothing remains to be done but to deliver the policy corresponding with the terms and date of application, should a loss occur before the execution of the policy, a court of equity would relieve the assured." *1 Duer on Insurance,* 66, Section 10.

In *Baldwin* v. *The Chouteau Insurance Company,* 56 Mo., 151, and 17 Am. Rep., 671, we find the following:

"In May on Insurance, Section 44, it is said that the agreement for insurance is complete when the terms thereof have been agreed upon between the parties, and the reciprocal rights and obligations of the insurer and the insured, date from that moment, without reference to the execution and delivery of the policy, unless these two elements are embraced within the terms agreed upon."

"Where, after oral contract of insurance, the premium is accepted and the policy delivered, it relates back to the making of the oral contract, and the assured is not bound at the time of paying the premium and receiving the policy to voluntarily inform the insurer of the destruction of the property." *Worth* v. *German Insurance Co.,* 64 Mo., 583.

We also cite *Gordon* v. *U. S. Casualty Company,* 54 S. W., 98, a Tennessee case of 1889; *Leichman* v. *Insurance Company,* 44 L. J., C. P., 185, 32 L. T., 170; 23 W. R., 723, an English case. See also *Flint* v. *Ohio Insurance Company,* 8 Ohio, 501.

We find none of the cases cited by counsel for plaintiff in error that conflict with the rule we have attempted to discuss. In *Cable* v. *U. S. Life Insurance Company,* in New York, 111 Fed., 19, the policy had a clause that it should take effect only upon

payment of the first premium and "delivery of policy during my life time in sound health and insurable condition." Cable had previously declined to accept the policy. In *Mutual Life Insurance Company* v. *Pearson*, 114 Fed., 395, it was provided in the policy that the insurance shall not take effect "until the first premium shall have been paid during my continuance in good health." Pearson was taken sick January 6th. January 7th the first premium was paid, the company not knowing of his illness, and on January 8th, he died. The question is on demurrer, on equity jurisdiction of the court to cancel policy.

In *Thompson* v. *Travelers Insurance Company, supra,* the condition of the policy was that "this policy shall not take effect until the first premium is actually paid by the insured in good health." It is not claimed in this case that the assured was not in good helth at the time he signed the application or at the time he was examined by the medical examiner of the company. It is not claimed that there were any misrepresentations made by him at any time. In the light of the authorities above cited we do not think there was any fraudulent concealment on the part of Moses Ford. The headquarters of the company were in Columbus, Ohio. The time it would take to reach Columbus by the usual course of mail is less than twenty-four hours. Ford was examined on the 27th day of June. If the result of his examination had been reported to the company on the day it was made, it should have reached the company on the 28th day of June. This is shown by the fact that Dr. Heely's report was mailed July 7th and reached the office of the company July 8th. Assuming if Dr. Heely had forwarded the application when he should have done so, on the 27th day of June, it should have reached the company's office on the 28th of June, and the policy should and would have been issued and in the hands of Ford long prior to the 7th day of July, when, it is said, he was taken ill. As we have stated, he knew nothing of this delay. He had a right to assume that the policy had been issued and was in the hands of the agent for delivery to him. The premium had been paid and accepted and everything required of the assured had been done. To say that when he was taken ill on July 7th,

long after the application for insurance and the medical examination had been made, it was then his duty to make additional disclosures to the company as to the condition of his health, we think is not supported by any authorities cited by counsel for plaintiff in error, but is opposed to all the authorities we have been able to find.

See on this question *Hartford Protection Insurance Company* v. *Harner,* 2 Ohio St., 452, opinion of Judge Ranney, 472-473.

Again, the medical examiner was appointed by the company to ascertain and report the physical condition of the applicant, Moses Ford. He was the only representative of the company in that regard known to the deceased, so far as the record shows. Whatever disclosures as to the condition of his health required to have been made by him should have been made to the medical examiners. This is manifestly true at the time of the examination. On the 7th of July the medical examiner sent his report of the examination of Ford to the company. On the same day he visited Ford and found him threatened with typhoid fever and was thereafter his attending physician until his death. It does not appear whether the deceased said anything to the doctor about his insurance policy, or of his making any additional report to the company in regard to his sickness, but what need therefor? The doctor was the medical examiner of the company, and the direct representative of the company to ascertain and report the physical condition of Ford, and he knew better than Ford did the prognosis of his disease. Being the agent of the company to report as to the health of applicants for insurance in the company, and especially as to Ford's health, we think his knowledge of Ford's illness must be imputed to the company; that the company must be held to know what their agent knew and failed to report.

The judgment of the court of common pleas will be affirmed.