THE JOHN HANCOCK MUTUAL LIFE INSURANCE CO.
v. BENEDICT. .

*Life insurance—Physical condition of applicant—Knowledge of physician not imputed to company, when—Facts acquired after examination but before application accepted.*

An examining physician, employed by a life insurance company for the sole purpose of making medical examinations of applicants for insurance and reporting same to the company, and who has no other duty or authority with reference thereto, is without power to waive a condition precedent contained in the contract of insurance; and subsequent knowledge of such physician relative to a changed physical condition of an applicant, acquired after the examination of such applicant but prior to the approval of the application and issuance of the policy, when not communicated by him to the insurance company, is not imputable to the company.

(Decided January 9, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Mallon & Vordenberg* and *Messrs. Vorys, Sater, Seymour & Pease,* for plaintiff in error.
*Mr. J. L. Kohl,* for defendant in error.

HAMILTON, P. J. The defendant in error, Grace L. Benedict, brought an action against the plaintiff in error in the court of common pleas of Hamilton county, Ohio, as beneficiary on a policy of life insurance, in the sum of five thousand dollars, on the life of Harry W. Benedict, husband of Grace L. Benedict, the life insurance company having refused payment thereunder and denied liability.

The essential facts, chronologically stated, are as follows:

On December 12, 1918, Harry W. Benedict made application to the John Hancock Mutual Life Insurance Company, of Boston, Massachusetts, plaintiff in error here, defendant below, for a policy of life insurance upon his life, in the sum of five thousand dollars. The application was in writing and signed and delivered to the agent of the company, the writing being denominated part "A" of his application. At that time Benedict paid to the agent of the company the first semi-annual premium. The agent, upon the receipt of the premium, issued a temporary receipt, authorized by the insurance company for prepayment of initial premium with the application. This receipt contained the provision:

"In consideration whereof it is understood and agreed that if the application is approved at the home office of the company, while the person to be insured is in the same condition of insurability shown in part 'B' of the application the insurance shall take effect (subject to the terms and conditions of the policy applied for) as of the date of such approval."

Thereupon the local agent of the company called upon one of the company's medical examiners in Cincinnati, Dr. Brady, to examine Benedict. On December 13, Dr. Brady made the examination, the result of which is in writing, and designated as part "B" of the application. The report of the examiner is to the effect that Benedict was an insurable risk, and was so reported and recommended to the home office.

On December 15, 1918, Dr. Brady was with a party of friends, one of whom was Mrs. Benedict, at the Music Hall in Cincinnati, attending a musi-

cal function. While at Music Hall word was received by Mrs. Benedict of the illness of her husband. Thereupon, Dr. Brady volunteered to take her home in his automobile, and, upon arriving at the Benedict home, found Mr. Benedict ill. Dr. Brady, in conversation with Benedict, was given the impression that Benedict was suffering from an attack of indigestion. He remained a short time and went away. At no time was Dr. Brady the physician of Benedict.

On December 18, Benedict was taken to the hospital, suffering with appendicitis, and was operated on that night for removal of the appendix. The physicians in charge at this time were Dr. Pauly, the family physician, and Dr. Fee, the operating physician.

Dr. Brady heard of the operation, either the next morning, December 19, or the morning after.

Mr. Benedict lingered until December 24, when he died.

The application in question was approved by the proper officer of the company at Boston on December 19, 1918. The policy was issued on December 20, and mailed to the general agent at Columbus. At the time of the receipt of the policy at Columbus the general agent had knowledge of the serious illness of Mr. Benedict, and withheld the policy. The policy was never delivered.

A few days after the death of Mr. Benedict, no executor or administrator having been appointed, the company tendered return of the semi-annual premium, paid at the time the application was signed, to the personal representative of the beneficiary, which tender was refused, and upon the bringing of this action the insurance company

paid the amount of the premium into court to await the result of this suit.

Three propositions are outstanding in this case:

1. That the contract of insurance was not complete unless and until approved at the home office of the company "while the person to be insured is in the same condition of insurability shown in part 'B' of the application."

2. That the provision, "while the person to be insured is in the same condition of insurability shown in part 'B' of the application," is a condition precedent.

3. That the said Benedict was not "in the same condition of insurability" at the time of the approval on December 19, 1918.

It may be conceded that the condition precedent, "while the person to be insured is in the same condition of insurability," could be waived, and the company elect to approve the application. The sole determinative question here is, Did it so waive the change in the insurable condition of Benedict and elect to approve the application notwithstanding? The defendant in error claims that it did so waive, and bases her contention upon the proposition that Dr. Brady, the medical examiner of the company, knew that Benedict was ill on December 15, and knew of his serious condition on December 19 or 20, and his knowledge is to be imputed to the company; that having elected, notwithstanding such knowledge, to approve the application, it cannot now avoid payment.

It is conceded that the home office had no knowledge of the change in the insurable condition of Benedict, unless the knowledge of Dr. Brady is imputed to it.

Plaintiff in error contends, that, under the law, Dr. Brady, who is one of the several medical examiners of the company in Cincinnati, and was called in by the local agent to make this examination, was only the agent of the company in so far as his duties were required in making the examination and report of the insurable condition of Benedict; that he was not an agent with power to make any contract or waive any condition.

The questions therefore narrow down to one proposition, whether under all the circumstances Dr. Brady's knowledge of Benedict's physical condition, acquired on December 15 and on December 19 or 20, is imputable to the insurance company.

The trial court charged as follows:

"I charge you, ladies and gentlemen, that if you find by a preponderance of the evidence that the witness Dr. Brady, was the agent of the defendant insurance company for the purpose of making the medical examination of the applicant, Harry Benedict, and you further find that he made said examination and reported his findings as to the physical condition of said Harry Benedict, and as to his insurability, to the defendant insurance company, and that Dr. Brady subsequent to making said medical examination and report thereof to the defendant insurance company, on either the 15th of December, 1918, or on the 19th of December, 1918, or both, received knowledge of the changed condition of insurability of said Harry Benedict, the knowledge of said Dr. Brady is imputed to the defendant insurance company, and his knowledge is the knowledge of the defendant. And if you find that the defendant company, after having said knowledge, or after Dr. Brady had knowledge of

the changed condition of insurability, accepted the application, or issued a policy, and placed it in the mails, upon the life of Harry Benedict, the defendant company is estopped to deny liability on the policy of insurance sued on by the plaintiff on the ground of changed condition of insurability of the insured.''

The evidence upon which this charge is based was undisputed. Therefore the charge was in effect an instructed verdict for the plaintiff beneficiary. On this charge alone the case would have to be reversed, as the only knowledge of Dr. Brady on the 15th was the casual knowledge of a slight indisposition, which would not affect the insurability of Benedict. But we do not rest our decision on that ground.

There is a highly respectable line of authorities holding that under similar conditions in an application, where material change occurs in the condition of the applicant before the contract is consummated, an absolute duty rests upon the applicant to make disclosure of the fact. *Cable* v. *U. S. Life Ins. Co.*, 111 Fed. Rep., 19, and cases there cited; *Mutual Life Ins. Co.* v. *Pearson*, 114 Fed. Rep., 395, 398.

While under the status of this case it may be contended that the disclosure to Dr. Brady was disclosure to the company, as Dr. Brady knew of the change, this proposition again carries us to the authority and the extent of the agency of Dr. Brady, the medical examiner.

In the case of *Gallant* v. *Metropolitan Life Ins. Co.*, 167 Mass., 79, the court, speaking through Chief Justice Field, says:

''The examining physician was only the agent

of the defendant to make the examination and report the result of it. He had no authority to make a contract of insurance for the company in which the results of his examination should be conclusively taken by the company to be true. The company made its own contract, a part of which was that no obligation was assumed by the company unless at the time when the policy was issued the insured was 'alive and in sound health.' If in fact the insured at that time was not in sound health, the defendant is not liable on the policy, and this fact can be shown by any competent evidence.''

While the facts of the *Gallant case* were not the same as the facts in this case, the principle announced as to the capacity of the medical examiner is in point.

In the case of *Leonard* v. *State Mutual Life Assurance Co.,* 24 R. I., 7, the court, in the third paragraph of the syllabus, holds:

''A medical examiner required to fill out a medical certificate is not the agent of the company for anything more than the certificate. Notice to him of anything not called for by the certificate is not notice to the company.''

In the case of *John Hancock Mutual Life Ins. Co.* v. *Houpt,* 113 Fed. Rep., 572, the court says in the syllabus:

''The fact that the physician who makes the medical examination has knowledge of the untruthfulness of the representations will not affect the company's right to the cancellation of the policy, he not having any power to enter into a contract of insurance or to make a waiver.''

See also 2 Joyce on Insurance, Section 515.

''Notice to the examiner of anything not called

for by his certificate, but which is a part of the application filled out by the solicitor, is not notice to the company." 3 Cooley's Briefs on the Law of Insurance, 2528; *Woodmen of the World* v. *Hall*, 104 Ark., 538.

While we have not been able to find a reported case involving the same facts as the instant case presents, and none has been cited, in all of the cases where the question of the authority of the medical examiner is presented the court has announced the rule to be that the medical examiner is only the agent of the insurance company to make the examination and report the result of it, and notice to him of anything not called for by the certificate upon which the examiner's report is made is not notice to the insurer.

In the case of *Mutual Life Ins. Co.* v. *Houpt, supra,* the further question was made that the policy contained the clause:

"No person except the president or secretary is authorized to make, alter, or discharge contracts, or waive forfeiture."

A similar clause, but of a more extended character, involving the same proposition, is contained in the policy in suit, limiting the authority of the power to waive to the president, vice-president, secretary or assistant secretary of the company. What effect this clause might have it is unnecessary now to determine under our view of the law.

The defendant in error relies strongly on the case of *Columbus Mutual Life Ins. Co.* v. *Ford*, 2 Ohio App., 410, in which it was held that the medical examiner's knowledge of the fact that Ford had typhoid fever at the time his report was sent in was knowledge of the company; but, while

the court made some pronouncement in that case in conflict with our decision here, there are some questions of fact that distinguish that case.

Our conclusion is that Dr. Brady, the medical examiner, was only the agent of the company for the purpose of making the examination and report, that he was without power to waive conditions precedent, and that his casual knowledge of the illness of the insured could not be imputed to the insurer. This conclusion disposes of all the separate questions of error raised.

As the essential facts which go to the question of law upon which we base our decision are all conceded, judgment may be entered here in favor of the plaintiff in error.

Since the main question decided here is in conflict with the decision of the Court of Appeals of the Seventh Appellate District of Ohio, in the case of *Insurance Co.* v. *Ford, supra,* the case will be certified to the Supreme Court for review.

*Judgment for plaintiff in error.*

CUSHING and BUCHWALTER, JJ., concur.